GOLDEN, Appellant, v. WHITESIDE, Respondent.

St. Louis Court of Appeals, January 24, 1905.

1. **MISTAKE: Annulling Judgment.** It is an ancient and general doctrine that a court of equity will set aside a judgment at law obtained through fraud, accident or mistake.

2. ————: **Decree Annulling Marriage: Action to Set Aside.** Plaintiff was deserted by her husband. After an absence of ten years, supposing him to be dead, she married a second husband from whom she separated, making with him a satisfactory division of their property. Afterwards, discovering that her first husband was living, she brought an action to annul her marriage with the second husband and obtained a decree to that effect. Subsequently, learning that her first husband had a wife living at the time she married him, she brought this action to set aside the decree annulling her marriage with the second husband on the ground of mutual mistake. The latter husband, defendant, died pending the suit and the action was continued against his administrator. There was no evidence that she performed any of the duties of wife to the defendant after their separation. *Held*, since the only effect of the decree in her favor would be to give her a right to dower in the last husband's estate, she was not entitled to recover.

Appeal from Clark Circuit Court.—*Hon. Edwin R. McKee,* Judge.

AFFIRMED.

*Berkheimer & Dawson* for appellant.

(1)    The doctrine is a familiar one that equity will interfere where a judgment is obtained or entered at law, through fraud, accident or mistake, and by all appropriate means will protect the rights and interests of the party who would otherwise be injudiciously affected thereby.    State ex rel. v. Engelmann, 86 Mo. 552; 3 Pom. Eq. Jur., sec. 1364, 1 Story Eq. Jur., sec. 252a; 2 Ib., sec. 876a; 2 Dan. Ch. Pr. 1624    The nullity decree was founded upon a mutual mistaken state of facts and was void.    (2)    The relief which equity gives in aid of a defective execution of powers may be occasioned by mistake as well as by accident. Judgment of law at law recovered through mistake may be a ground for the interposition of equity in enjoining or setting aside the judgment, to the same extent and under the same limits as those recovered by accident. 2 Pomeroy, Eq. Jur. (2 Ed.), secs. 871, 836; Bispham on Equity, pp. 37, 53.    Judgments may be corrected in equitable proceedings.    Partridge v. Harrow, 99 Am. 644; Sidener v. Coons, 83 Ind. 187; Snyder v. Ives, 42 Iowa 163; Barthell v. Roderick, 34 Iowa 520.    Equity will relieve mistakes.    Cohen v. Dubose, 14 Am. Dec. 709.    (3) Equity will relieve against a judgment where the defendant with reasonable diligence was not able to ascertain the fact to support a defense at law until after the judgment.    Pearce v. Chasteen, 46 Am. Dec. 423; Hubbard v. Hobson, 1 Ill. 190; Meek v. Howard, 18 Miss. 502; Powers v. Butler, 4 N. J. Eq. 465; Brandon v. Green, 25 Tenn. 130; Ferrell v. Allen, 5 W. Va. 43.    (4)    A court of equity will grant relief in cases of mistake in judgments, decrees or other matters of record, when the mistake is not judicial, and there is no other method of obtaining relief where a judgment has been obtained through fraud, accident or mistake without fault on the part of complainant, equity will set it aside.    15 Am. and Eng. Ency. of Law (1 Ed.), par.

6, p. 665; Smith v. Butler, 11 Ore. 46; Baker v. O'Riordan, 65 Cal. 368; Loss v. Obry, 22 N. J. Eq. 52; Bates v. Garrison, Harr. (Mich.) 221; Senter v. Senter, 70 Cal. 619; Robbins v. Swain, 68 Ill. 197.

*W. T. Rutherford, Truman Plantz* and *John D. Smoot* for respondent.

BLAND, P. J.—The suit is by bill in equity to set aside a decree rendered by the Clark Circuit Court at its November term, 1897, annulling a marriage between plaintiff and William Golden. The facts upon which plaintiff relies to have said decree set aside, briefly stated, are as follows:

In the year 1876, plaintiff married one David Townsend, by whom she had several children. Townsend deserted her in 1882 and was not heard of by her for over ten years. Thereafter, in 1892, plaintiff, supposing Townsend to be dead, married William Golden, with whom she lived as his wife for about three years, when, by mutual consent, they separated and made a division of their property satisfactory to both parties. About two years after the separation, plaintiff learned that Townsend was living and was an inmate of the Soldiers' Home at Quincy, Illinois. On gaining this information, she commenced her suit against William Golden to annul their marriage, setting forth her marriage to Townsend, his desertion and disappearance, her supposition that he was dead and her marriage to Golden. Golden answered admitting the facts stated in the petition, and the court found the facts as alleged and entered a decree annulling the marriage between plaintiff and Golden. Townsend, who was an ex-soldier, died in 1900 or 1901, and plaintiff, after learning of his death, made application to The United States Pension Department for a pension as the widow of Townsend. In reply to her application, she received a letter from the commissioner of pensions which was read in evidence by agreement. The letter is as follows:

"Department of the Interior.
"Bureau of Pensions.
"Washington, D. C., September 11, 1901.
"Mrs. Matilda Townsend,
"Kahoka, Clark County, Mo.

"Madam:   In response to your communication of May 17, 1901, relative to your rejected claim as widow of David Townsend, late of Company G, 124 Illinois Infantry, Original No. 497310, which claim is on file with the papers in the claim of Elizabeth Townsend, who was granted a pension as widow of said soldier under certificate No. 512088. You are advised that after an exhaustive special examination the evidence shows that the soldier was married previous to his marriage to you, to-wit, on August 5, 1852, in Henry county, Iowa, he was married to Miss Elizabeth Cahill, and the record of said marriage is on file in the Marriage Record of said county.   The evidence further showed that said soldier was never divorced from the woman Elizabeth, and such were the grounds upon which your claim was rejected.

"In further response to your inquiries, you are advised that the pensioner, Elizabeth Townsend, resides at Arapahoe, Furnice county, Nebraska.

"It is also deemed proper to add that the soldier again married, after he deserted you, on August 18, 1886, to Miss Lucy Ann Riley, at Alton, Illinois, Madison county, and such person was also an applicant for a pension, but her claim was rejected upon the same ground as your own.

                    "Very respectfully,
              "H. Clay Evans, Commissioner."

On the reception of this letter, plaintiff commenced this suit.

The answer was a general denial.

William Golden died about the time the first petition was filed in the suit, and the petition was amended

by making Golden's administrator defendant. The evidence for defendant shows that William Golden, after being taken to the poorhouse was removed therefrom by a friend and placed in a vacant house in the same town where plaintiff resided and that he died in this vacant house, attended only by one or two of his male friends. Plaintiff, though aware of Golden's sickness and of his whereabouts, did not visit him during his sickness nor go to the house where he was until after he was dead and placed in his coffin, when she appeared and claimed the body for burial. It shows that Golden left an estate consisting of personal property valued at about twelve hundred dollars.

The chancellor found the issues for defendant from which plaintiff appealed.

The suit, being one in equity, should be disposed of upon equitable grounds. The doctrine, that a court of equity will set aside a judgment at law obtained through fraud, accident or mistake, is an ancient and familiar one. [State ex rel. Phelan v. Englemann, 86 Mo. l. c. 562.] As said by PHILLIPS, Justice, in Purdy v. Gault, 19 Mo. App. l. c. 198, "Our Supreme Court reports abound in cases where this jurisdiction (to set aside judgments obtained through fraud, mistake or accident) has been time and again exercised." Now conceding, for the sake of argument, that the evidence shows the nullity decree was obtained through the mistake of plaintiff and William Golden as to the facts upon which the decree is based and that plaintiff was guilty of no negligence, laches or other fault in failing to discover that Townsend was a married man at the time she entered into the matrimonial relation with him, should the decree be set aside? Looking beyond the decree itself, and taking into view the results that would follow a judgment setting aside that decree, we think the decree should be permitted to stand, notwithstanding it was obtained through mutual mistake. Plaintiff and Golden, by mutual agreement, agreed to live

separate and apart about two years prior to the rendition of that decree and they made a division of their property that was satisfactory to the plaintiff, she, according to the evidence, getting the most of it. Golden is dead and to set aside the nullity decree would operate to give the plaintiff a right of dower in his estate and this is all that could be accomplished whereby plaintiff would be in the least benefited. At the time of the separation, she received as much of Golden's property as she then claimed and was satisfied with the division then made. There is no evidence that his estate improved after the separation, and no evidence that plaintiff, after this event, performed any of the duties of a wife to Golden or rendered him any services as such. In these circumstances, I think plaintiff ought to be held to abide the division of property made by her and Golden at the time of the separation; that she, in equity, is not entitled to share in the distribution of his estate, and affirm the judgment. All concur.